# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:13-cr-00019-RCJ-GWF |
| vs. | **ORDER** |
| CHILICIA JAMERSON, | Motion to Sever (#33) |
| Defendant. | |

This matter comes before the Court on Defendant Chilicia Jamerson's ("Jamerson") Motion to Sever (#33), filed on May 8, 2013. Plaintiff filed a Response (#38) on May 24, 2013. The Court conducted a hearing on the Motion on June 13, 2013. *See Minutes of Proceedings, Doc. #39*.

## BACKGROUND

On January 15, 2013, a grand jury returned an Indictment (#1) charging Co-Defendants Chilicia Jamerson ("Jamerson") and Joshua Croft ("Croft") with one count of Conspiracy to Interfere with Commerce by Robbery, *Indictment, Doc. #1, Count One*, one count of Interference with Commerce by Robbery, *Id., Count Eleven*, and two counts of Brandishing a Firearm During a Crime of Violence. *Id., Counts Two and Twelve*. The Indictment further charges Croft with an additional four counts of Interference with Commerce by Robbery, *Id., Counts Three, Five, Seven, and Nine*, and four counts of Brandishing a Firearm during a Crime of Violence. *Id., Counts Four, Six, Eight, and Ten*. The Indictment stems from a string of robberies of Las Vegas, Nevada convenience stores allegedly committed by Croft and Jamerson.

The United States summarizes its case against the Defendants as follows: On December 28, 2012, an armed robbery occurred at the Circle K located at 700 E. Naples in Las Vegas, Nevada ("Store"). The resulting investigation revealed that a female subject, later identified as Jamerson, entered the Store carrying a handgun with a male subject later identified as Croft. Croft instructed

the Store's clerk to empty the cash registers into a white plastic grocery bag. Jamerson and Croft then collected cigarettes and gum from around the register. Croft also took the clerk's wallet, and Jamerson and Croft fled in a black Chrysler 300 sedan. Officers located the Chrysler shortly thereafter, and the occupants, Croft and Jamerson, were arrested after a brief chase. The clerk's wallet and a handgun matching that used in the robbery were thrown from the vehicle during the chase, but were recovered. Officers towed the vehicle and searched it pursuant to a state search warrant, recovering a mask, gloves, a white plastic grocery bag, money, cigarettes and gum.

Post-Miranda, Jamerson provided a taped confession to the Las Vegas Metropolitan Police Department robbery detectives. Croft, after the Miranda warnings, denied any involvement in the robbery, but admitted that he was driving the searched vehicle. Detectives believed the December 28 robbery was linked to at least four others due to similar modus operandi, specifically the use of a black Chrysler 300 as a getaway vehicle. During her interview, Jamerson admitted to participating in three additional armed robberies with Croft in the days leading up to the December 28 robbery. With Jamerson's descriptions and information already known, detectives identified the following locations as having also been robbed by Jamerson and Croft: (1) the 7-11 located at 9755 W. Russell Road in Las Vegas on December 21, 2012; (2) the Speedee Mart at 3480 S. Hualapai Way in Las Vegas on December 21, 2012; (3) the 7-11 at 4395 North Las Vegas Boulevard in Las Vegas on December 22, 2012; and (4) the Circle K at 5400 West Vegas Drive in Las Vegas on December 27, 2012. In each of these robberies, the suspect is described as being a black adult male, 20 to 30 years old, 6'0"o 6'2"in height, 200 to 220 pounds, and as carrying a handgun matching the one used in the December 28 robbery. A black Chrysler 300 was also seen in all but one of the five robberies.

**DISCUSSION**

Rule 8(b) of the Federal Rule of Criminal Procedure permits the joinder of defendants who have allegedly participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. Co-defendants jointly charged are, prima facie, to be jointly tried. *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991). This rule "should be construed broadly in favor of initial joinder." *United States v. Ford*, 632 F.2d 1354, 1373 (9th Cir.), *cert.*

*denied*, 450 U.S. (1981). Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence. *United States v. Vasquez–Velasco*, 15 F.3d 833, 844 (9th Cir.1994). There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same evidence again and again[.]" *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

## I.     Threat of Unfair Prejudice

Federal Rule of Criminal Procedure 14 provides a defendant relief from joinder if he satisfies the "heavy burden" of showing that prejudice would result from joinder. *United States v. Sitton*, 968 F.2d 947, 961 (9th Cir. 1992). Because prejudice results from any joinder, "if only 'some' prejudice is all that need be shown [for severance], few, if any, multiple defendant trials could be held." *United States v. Vaccaro*, 816 F.2d 443 (9th Cir. 1987). "Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Accordingly, when defendants have been properly joined under Rule 8, severance should only occur where there is a serious risk that a joint trial would either compromise a specific constitutional right of one of the defendants or prevent the jury from compartmentalizing the evidence as it relates to individual defendants. *See id.* at 539; *see also United States v. Escalante*, 637 F.2d 1197, 1201-02 (9th Cir. 1980). Even where the risk of prejudice seems high, such risk can often be cured by "less drastic measures, such as limiting instructions[.]" *Zafiro*, 506 U.S. at 539.

Jamerson argues the bulk of the evidence in this case implicates Croft in the commission of his additionally-charged robberies, and that the jury may impermissibly consider it against Jamerson. In *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977), the appealing defendant was likewise joined to other co-defendants for a trial where much evidence inapplicable to him would be presented for other charges against his co-defendants. On appeal from the denial of his motion to sever, the defendant argued the evidence introduced "infect[ed] each defendant with the acts and transgressions of the other defendants[.]" *Id.* In affirming the district court's denial of the motion, the Ninth Circuit noted that the trial court "carefully and frequently advised the jury that

evidence admitted solely against one defendant was not by the jury to be considered in determining the guilt or innocence of any other defendant," and that the jury "was emphatically instructed that the guilt or innocence of each defendant was to be judged solely on the facts admitted against that defendant without consideration as to its finding as to other defendants." *Id.* at 1334. Indeed, the Ninth Circuit regularly affirms the denial of motions to sever where any potential prejudice is cured by limiting instructions. *See, e.g., United States v. Garcia*, 506 Fed.Appx. 593 (9th Cir. 2013) (defendant was not prejudiced by joint trial where the trial judge gave clear instructions to the jury that neutralized any potential prejudice); *United States v. Sumeru*, 449 Fed.Appx. 617 (9th Cir. 2011) (any risk of prejudice was cured by the court's frequent use of limiting instructions before, during, and after the close of evidence); *United States v. Stinson*, 647 F.3d 1196 (9th Cir. 2011) (because the district court used great diligence in instructing the jury to separate the evidence, severance was unnecessary).

Here, Jamerson is alleged to have conspired with Croft to commit five robberies. Jamerson notes that with respect to four of the robberies, Jamerson was not identified, and that indeed the victims only identified one individual as having robbed them, a black male. Jamerson conclusorily states that "the jury will not be able to compartmentalize the evidence as it relates to [her]." Jamerson relies on *United States v. Mayfield*, where the defendant's conviction was overturned due to the district court's denial of mid-trial motions to sever. 189 F.3d 895, 907 (9th Cir. 1999). The *Mayfield* Court noted, however, that the district court's "initial denial of Mayfield's severance motion was understandable, based on pretrial representations made by the government about the evidence that would be admitted." *Id.* at 897. At the *Mayfield* trial, the co-defendant's counsel subsequently brought out lengthy testimony that would not have been admissible against the appealing defendant in a separate trial, at which point the district court again denied a motion to sever. *Id.* at 907. Based on the United States' representations in this case, the Court finds that any potential prejudice against Jamerson can be cured with proper limiting instructions.

**II.    Mutually Antagonistic Defenses**

Jamerson further contends severance is proper because she and Croft have mutually antagonistic defenses. A defendant is entitled to severance based upon mutually antagonistic

defenses only if "the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." *United States v. Thockmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). Mere inconsistency in defense positions is insufficient to find co-defendants' defenses antagonistic. *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991). Rather, "[m]utually exclusive defenses are said to exist when acquittal of one co-defendant would necessarily call for the conviction of the other." *Id*. "The prototypical example is a trial in which each of two defendants claims innocence, seeking to prove instead that the other committed the crime." *Id.* Furthermore, mutually antagonistic defenses are not prejudicial per se. *Zafiro*, 506 U.S. 534 at 539. Even if prejudice is shown, the tailoring of the relief to be granted, if any, is in the district court's sound discretion. *Id.*

In *United States v. Tootick*, the court reversed defendants' convictions where they accused each other of having stabbed the victim. The court stated that the defendants' attorneys acted as "unsanctioned prosecutors" during the trial. 952 F.2d at 1085. In reversing the convictions, the Ninth Circuit also cited the trial judge's failure to control the defendant's counsel's conduct or instruct the jury at appropriate times during the trial. *Id.* at 1082.

In *United States v. Voigt*, 89 F.3d 1050, 1094-95 (7th Cir. 1996), however, the Seventh Circuit stated that while mutually antagonistic defenses have been much discussed in theory, only rarely have courts found that they exist in practice. "Far more frequently, courts have concluded that the asserted defenses, while in conflict with one another, are not so irreconcilable that the jury could not have been able to assess the guilt or innocence of the defendants on an individual and independent basis." *Id.* (internal citations and quotations omitted). *Voigt* also noted that courts have consistently held that finger-pointing and blame-shifting among co-conspirators do not support a finding of mutually exclusive defenses. *Id.* at 1095 (citing *United States v. Provenzano*, 688 F.2d 194, 198 (3rd Cir.), *cert. denied*, 459 U.S. 1071 (1982) and *United States v. Smith*, 44 F.3d 1259, 1266-67 (4th Cir. 1995)). The Fourth Circuit, in *United States v. Smith,* stated in this regard:

...

> Because joint participants in a scheme often will point the finger at each other to deflect guilt from themselves or will attempt to lessen the importance of their role, a certain amount of conflict among defendants is inherent in most multi-defendant trials. In order to justify a severance, however, joined defendants must show that the conflict is of such magnitude that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.

44 F.3d at 1266-67 (internal quotations and citations omitted).

Here, Jamerson merely states that she and Croft "*may* end up 'pointing the finger' at each other during trial." *See Motion, Doc. #33,* at 4:21 (emphasis added). The potential of mere finger-pointing, however, does not merit severance. *See supra, Voigt*, 89 F.3d 1050 at 1095. Jamerson does not indicate in any detail what defenses she and Croft will lodge that will exonerate one defendant and implicate the other. Jamerson does not establish that her acquittal in this case will necessarily lead to the conviction of Croft or vice-versa. Therefore, Jamerson has not made the requisite showing that she will mount a mutually exclusive defense to an extent requiring severance. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Chilicia Jamerson's Motion to Sever (#33) is **denied**.

DATED this 24th day of July, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge